AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple IPhone 13 in a Gold Glitter Case
Seizure No. R2-23-0002 Exhibit 1
("Target Device")

Case No. '22 MJ03665

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Possession with Intent to Distribute |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony Lyons, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means).*

Date: October 6, 2022

_____
*Judge's signature*

City and state: San Diego, California     Lupe Rodriguez, Jr., United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple IPhone 13 in a Gold Glitter Case
>
>Seizure No. R2-23-0002 Exhibit 1
>
>("Target Device")

The Target Device is currently in the possession of Drug Enforcement Agency, located at 4560 Viewridge Ave, San Diego, CA, 92123.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 4, 2022, up to and including October 4, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;
b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;
c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;
d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits, such as stash houses, load houses, or delivery points;
e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or
f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841.

# AFFIDAVIT

I, Special Agent Anthony Lyons, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Apple IPhone 13 in a Gold Glitter Case
>
>Seizure No. R2-23-0002 Exhibit 1
>
>("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Terese Lea WHITE ("Defendant") for possession with intent to distribute approximately 1.51 kilograms (3.33 pounds) of fentanyl. The Target Device is currently in the custody of Drug Enforcement Agency and located at 4560 Viewridge Ave, San Diego, CA, 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2010. I am currently assigned as a Task Force Agent (TFA) with the Drug Enforcement Agency (DEA) Narcotics Task Force (NTF) Group 8 at the San Diego International Airport. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my

training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and attempt to further narcotics deeper into the U.S. to maximize profits.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances throughout the United States by concealing the controlled substances in vehicles or on persons traveling throughout the United States. With respect to the trafficking of narcotics in this manner, I am aware that narcotics traffickers frequently communicate with the individual responsible for trafficking the concealed narcotics. These communications can occur before, during and after the narcotics are trafficked throughout the United States. For example, prior to the trafficking, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics trafficking. When the trafficking is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been trafficked throughout the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to the intended destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular

telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.   tending to indicate efforts to import controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;

    b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;

    c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits;

    d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and attempt to further narcotics deeper into the U.S. to maximize profits, such as stash houses, load houses, or delivery points;

    e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On October 4, 2022, at approximately 1:25 PM, Teresa Lea WHITE ("WHITE") submitted to Security Screening at the Transportation Security Administration ("TSA"), Checkpoint 6 at the San Diego International Airport. WHITE, an off-duty Mesa Airlines Flight Attendant, utilized the Known Crew Member ("KCM") queue to bypass normal security screening procedures. As part of

TSA's Unpredictable Screening Procedures ("USP"), WHITE was selected to pass through normal security screening procedures.

8. While proceeding through normal security procedures, WHITE alarmed the Walk-Through Metal Detector. Subsequently, WHITE was sent through the Advanced Imaging Technology ("AIT") which generated an alarm on her abdomen area. Transportation Security Officers ("TSO") noted that WHITE initially appeared hesitant to enter the AIT and then was shaking when she was standing still inside of the AIT.

9. A TSO was unable to resolve the alarm so WHITE was sent to a private screening room for additional screening. During additional screening, WHITE removed a large mass that was wrapped around her abdomen. TSA notified the Harbor Police Department ("HPD") which responded to the checkpoint with Special Agents ("SAs") of the Drug Enforcement Agency ("DEA") Narcotics Task Force, Group 8 ("NTF 8"), and a California Highway Patrol ("CHP") Canine Team.

10. The CHP Canine Team conducted a sniff on the mass that was removed from WHITE. The Narcotic Detection Dog alerted to the mass.

11. While in custody of HPD Police Officers and NTF 8 SAs, WHITE made spontaneous statements staying that she was flying "non-revenue" to Boston and that the item discovered by TSA was "not what you think." WHITE stated that one of her co-workers gave her a "mercury pack" to wear for weight loss.

12. A sample of the substance contained within the package field tested positive for the characteristics of fentanyl.

13. A total of 1 package was seized with a total approximate weight of 1.51 kgs (3.33 lbs).

14. WHITE was placed under arrest at approximately 3:10 PM. WHITE was charged with California Health and Safety Code 11350(a) and 11352(a) and was transported to Las Colinas Detention Facility.

15. On October 5, 2022, the California Health and Safety charges were dropped in lieu of Federal Criminal Proceedings. WHITE was transported from Las Colinas Detention Facility to the Western Region Detention Facility. WHITE was charged with a violation of Title 21, United States Code, 841(a)(1), Possession of a Controlled Substance with Intent to Distribute.

16. The Target Device was found in the Defendant's possession and seized by a Harbor Police Department Officer who was tasked with the initial custody of the Defendant and inventory all the property seized from the Defendant and his/her property. The Target Device was in the Defendant's hands when first encountered by Officers with the Harbor Police Department.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on September 4, 2022, up to and including October 4, 2022.

**METHODOLOGY**

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.  Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

22.  Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Anthony Lyons
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 6th day of October, 2022.

_____  10:13 a.m.

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge